UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIMOTHY WILEY,

        Plaintiff,

    v.                                           18-CV-855
                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

On August 2, 2018, the plaintiff, Timothy Wiley, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On July 29, 2019, Wiley moved for judgment on the pleadings, Docket Item 14; on September 27, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on October 21, 2019, Wiley replied, Docket Item 19.

For the reasons stated below, this Court denies Wiley's motion and grants the Commissioner's cross-motion.[1]

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision, and will reference only the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## **DISCUSSION**

### I. ALLEGATIONS

Wiley argues only that the Appeals Council erred in failing to consider additional evidence that he submitted and that in light of that evidence, the ALJ's decision should be vacated and reversed or remanded. Docket Item 14-1. This Court disagrees and affirms the Commissioner's finding.

### II. ANALYSIS

"Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." *Hollinsworth v. Colvin*, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). "[N]ew evidence submitted to the Appeals

Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). To be entitled to a remand so that the Commissioner can consider new evidence, a claimant must

> show[ ] that (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the evidence is material, that is, both relevant and probative, such that there is a reasonable possibility that the new evidence would have influenced the agency to decide differently; and (3) there was good cause for the claimant's failure to present the evidence earlier.

*Ostrovsky v. Massanari*, 83 F. App'x 354, 358 (2d Cir. 2003) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988)).

Here, Wiley submitted to the Appeals Council three letters from Jeffrey Lackner, Psy.D, to Eugene Gosy, M.D. Docket Item 14-3. Dr. Lackner began treating Wiley during the disability period, and the ALJ had considered Dr. Lackner's initial assessment of Wiley from February 2016. Docket Item 9 at 24. The additional letters describe Wiley's "behavioral self-management treatment for chronic abdominal and back pain" from April 2017 through August 2017—after the disability period ended and the ALJ issued his decision. Docket Item 14-3 at 3-5.

For the reasons that follow, this Court finds both that the evidence is cumulative and that there is not "a reasonable possibility that [Dr. Lackner's letters] would have influenced the agency to decide differently." *Ostrovsky*, 83 F. App'x at 358. Remand, therefore, is not warranted.[2]

---

[2] The Commissioner also argues that Wiley has not shown good cause for failing to submit the evidence earlier. Docket Item 17-1 at 8. In light of this Court's conclusion

3

In his July 2017 letter, Dr. Lackner stated that Wiley "remains disabled from returning to his former job, whose demands and work requirements exceed his personal tolerances." Docket Item 14-3 at 4. Dr. Lackner added that Wiley was unlikely to be able to "return to that position in the foreseeable future, if ever." *Id.* Wiley's primary argument is that these opinions were "entitled to an evaluation under the treating physician rule." Docket Item 14-1 at 16-18; *see also* Docket Item 19 at 3; 20 C.F.R. § 404.1527(c)(2) (explaining that a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record").

But Dr. Lackner's opinions that Wiley could not "return[ ] to his *former job*" and would likely never be able to "return to *that position*," Docket Item 14-3 at 4 (emphasis added), are fully consistent with the ALJ's determination at step four that Wiley "was unable to perform any past relevant work," Docket Item 9 at 27. Thus, even assuming for the sake of argument that Dr. Lackner's opinions should have been analyzed under the treating physician rule, there is no reasonable possibilty that the result would have been different.

Wiley also asserts that the ALJ "incorrectly concluded" that Wiley had not "followed up with [Dr. Lackner's] recommendations" for treatment. Docket Item 14-1 at 19 (quoting Docket Item 9 at 24). According to Wiley, "Dr. Lackner's subsequent treatment notes clearly indicated [that Wiley] did follow [Dr. Lackner's]

---

that Dr. Lackner's letters do not meet either of the first two elements for remand, it need not address whether Wiley has shown good cause.

4

recommendations and provided more insight into the basis, legitimacy, and functional effects of [Wiley]'s pain." *Id.*

As an initial matter, Dr. Lackner's April 2017 letter suggests that, at least initially, Wiley did not fully comply with his prescribed regimen. *See* Docket Item 14-3 at 3 (stating that "Wiley failed to complete home exercises that were assigned" and "[u]nless he is willing to invest time and effort in developing a set of self-management skills between sessions, we are not making good use of our time"). In fact, the only significant message in that letter is that Wiley is not complying and that unless he begins to comply, "we are just spinning our wheels." *Id.* Thus, this letter actually weighs against Wiley's claim of disability. *See Glover v. Astrue*, 2010 WL 1035440, at *6 (W.D.N.Y. Mar. 18, 2010) (explaining that the claimant's "fail[ure] to properly treat her back pain . . . render[ed] her ineligible for disability benefits"); *see also* SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017)) ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Moreover, the three letters written by Dr. Lackner in 2017 add little, if anything, to the analysis of Wiley's pain. Dr. Lackner's earlier evaluation of Wiley—which the ALJ considered—noted chronic pain ranging from "2 to 6 in severity," Docket Item 9 at 24; his 2017 letters say nothing different, *see* Docket Item 14-3 at 3 ("persistent pain that on average is described as moderate in intensity (5/10 NRS)"); *id.* at 4 (same). In 2016, Dr. Lackner noted that medication relieved Wiley's pain "50%" for "6 to 8 hours a day," Docket Item 9 at 24; in 2017, Dr. Lackner estimated "relief from pain treatments" at

5

"40%," Docket Item 14-3 at 4. In both 2016 and 2017, Dr. Lackner noted that the pain interfered with Wiley's activities of daily living. *Compare* Docket Item 9 at 24 (ALJ's observing that "Dr. Lackner noted . . . pain that markedly interferes with general activity[,] walking ability[,] and normal work"), *with* Docket Item 14-3 at 3 (pain "interferes with most activities of daily living"). So the ALJ already evaluated Dr. Lackner's opinions expressed in his later letters because they were the same opinions expressed in his earlier report. The ALJ nevertheless found—based on substantial evidence in the record, including the opinions of three other treating physicians and two consultative examiners—that Wiley's "complaints suggest a greater severity of symptoms than can be shown by the objective evidence and the record as a whole." *Id.* at 25-26. Nothing in Dr. Lackner's subsequent letters changes that calculus.

Finally, while Dr. Lackner's letter of August 7, 2017, noted that Wiley's "pain . . . has increased somewhat since I last saw him," Docket Item 14-3 at 5, Dr. Lackner "last saw" Wiley in July 2017, *see id.* at 4, long *after* the date last insured—that is, December 31, 2016, *see* Docket Item 9 at 17. Any increase in pain after that date is irrelevant to the Appeals Council's evaluation of the ALJ's RFC. *See Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 362 (W.D.N.Y. 2018) (explaining that "evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council").

In sum, the ALJ's decision (1) is consistent with Dr. Lackner's opinion that Wiley could never return to his former work and (2) addressed Dr. Lackner's observations—first made in 2016 and later included in his 2017 letters—about Wiley's pain and its

effects. Therefore, the letters are cumulative of evidence already in the record, and there is not a reasonable possibility that those letters would have influenced the Commissioner to decide differently. For those reasons, this Court grants the Commissioner's motion for judgment on the pleadings.

## **CONCLUSION**

Although this Court has sympathy for Wiley and the hardships that must stem from the impairments he experiences, the ALJ's decision neither was contrary to the substantial evidence in the record—including the three letters from Dr. Lackner that Wiley submitted to the Appeals Council—nor did it result from any legal error. Therefore, for the reasons stated above, Wiley's motion for judgment on the pleadings, Docket Item 14, is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, Docket Item 17, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: January 28, 2020
Buffalo, New York

 *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

7